UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF FLORIDA

TAMPA DIVISION

| | |
|---|---|
| THOMAS E. PEREZ, Secretary of Labor, United States Department of Labor, | ) ) ) Case No. 8:14-cv-00066-VMC-TGW |
| Plaintiff, | ) ) ) |
| v. | ) ) |
| GEOPHARMA, INC.; MIHIR K. TANEJA, an Individual; CAROL DORE-FALCONE, an Individual; SUSAN BONGIOVANNI, an Individual; and the GEOPHARMA, INC. GROUP HEALTH PLAN; | ) ) ) ) ) ) ) |
| Defendants. | ) |

## **SECRETARY'S MEMORANDUM IN OPPOSITION TO DEFENDANT MIHIR K. TANEJA'S MOTION TO DISMISS**

COMES NOW Plaintiff Thomas E. Perez, Secretary of Labor, United States Department of Labor ("the Secretary"), through counsel, and opposes Defendant Mihir K. Taneja's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). The Motion should be denied as it is without merit. On its face, the Complaint complies with the Federal Rules of Civil Procedure as it sufficiently pleads facts which, if proven, will establish that Mihir K. Taneja ("Taneja") is a fiduciary within the meaning of section 3(21)(A) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq.*, who may be held liable for losses caused by the fiduciary breaches and prohibited transactions alleged in the Complaint. Therefore, as explained more fully below, Defendant's motion should be denied.

**I. Introduction**

ERISA is a comprehensive statute designed to promote the interests of employees and their beneficiaries in employee benefit plans. *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 90 (1983); *Nachman v. Pension Benefit Guaranty Corp.*, 446 U.S. 359, 361-62 (1980). "The floor debate . . . reveals that the crucible of congressional concern was misuse and mismanagement of plan assets by plan administrators and that ERISA was designed to prevent these abuses in the future." *Mass. Mut. Life Ins. Co. v. Russell,* 473 U.S. 134, 140 n.8 (1985) (citing the legislative history). Moreover, "the fiduciary obligations of plan administrators are to serve the interests of participants and beneficiaries and, specifically, to provide them with the benefits authorized by the plan . . . [and] the principal statutory duties imposed on the trustees relate to the proper management, administration, and investment of fund assets, the maintenance of proper records, the disclosure of specified information, and the avoidance of conflicts of interest." *Russell,* 473 U.S. at 142-143.

To this end, ERISA imposes a number of stringent duties on those who serve as plan fiduciaries, including a duty of undivided loyalty, a duty to act for the exclusive purposes of providing plan benefits and defraying reasonable expenses of administering the plan, and a stringent duty of care grounded in the prudent man standard familiar from trust law. 29 U.S.C. § 1104(a)(1)(A) and (B). These fiduciary standards were derived from the common law of trusts, but they are even "more exacting" than their common law counterparts and must be considered in light of the "special nature and purpose of employee benefit plans." *Donovan v. Mazzola*, 716 F.2d 1226, 1231 (9th Cir. 1993), *cert. denied*, 464 U.S. 1040 (1984). It is partially because of this special nature and purpose that the Second Circuit has described a fiduciary's duties under ERISA as "the highest known to the law." *Donovan v. Bierwirth*, 680 F.2d 263, 272 n.8 (2d

Cir.), *cert. denied*, 459 U.S. 1069 (1982); *Herman v. Nationsbank Trust Co.*, 126 F.3d 1354, 1361 (11th Cir. 1997).

In addition, ERISA section 406(a) prohibits certain transactions between the plan and parties in interest to the plan, including a plan's fiduciaries. It provides in part:

> Except as provided in section 408:
>
> (1) A fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect –
> …
>
> (D) transfer to, or use by or for the benefit of, a party in interest, of any assets of the plan ....

29 U.S.C. § 1106(a). These types of transactions are "per se" violations of ERISA, without regard to motive or intent, and without consideration of the merits of the transaction. "[T]he object of section 406 was to make illegal <u>per se</u> the types of transactions that experience had shown to entail a high potential for abuse." *Donovan v. Cunningham*, 716 F.2d 1455, 1464-65 (5th Cir. 1983), *cert. denied*, 467 U.S. 1251 (1984).

Finally, ERISA sections 502 and 409, 29 U.S.C. §§ 1132 and 1109, provide for the type of civil actions allowed and the liability for violations of ERISA. ERISA section 502(a) provides in relevant part:

> A civil action may be brought ...
>
> (2) by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under § 409; ... [and]
>
> (5) except as otherwise provided in subsection (b), by the Secretary (A) to enjoin any act or practice which violates any provision of this title, or (B) to obtain other appropriate equitable relief (i) to redress such violation or (ii) to enforce any provision of this title; ....

29 U.S.C. § 1132(a).

3

In addition, ERISA section 409 provides that:

> (a) Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this title shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through used of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary. A fiduciary may also be removed for a violation of § 411 of this Act.

29 U.S.C. § 1109.

## II. The Secretary's Claims

The Secretary initiated legal action on January 14, 2014. (Document No. ("DN") 1). Defendant Geopharma, Inc. ("Geopharma" or "the Company") was the sponsor and administrator of the Geopharma, Inc. Group Welfare Plan (hereinafter "the Plan"), which was established in 1985 to provide welfare benefits for employees. (DN 1, ¶¶ 4, 6, 12). The Plan was funded by employer contributions, employee premium contributions deducted from payroll, and former employees' premium payments for continuation of coverage ("COBRA premium payments"). (DN 1, ¶ 13). In 2009, Geopharma provided medical, prescription drug, and life insurance benefits to Plan participants through a contract with Aetna U.S. Healthcare ("Aetna"). (DN 1, ¶ 14). Aetna retroactively cancelled the contract with Geopharma for non-payment of premiums effective October 1, 2009. (DN 1, ¶ 15).

Effective January 1, 2010, Geopharma established a self-funded arrangement to provide medical and prescription drug benefits to Plan participants. (DN 1, ¶ 18). Under Geopharma's self-funded arrangement, approved benefit claims were to be funded from Geopharma's general assets, participating employees' premium contributions deducted from payroll, and former

employees' COBRA premium payments. (DN 1, ¶ 19). During 2010, Geopharma contracted with Aetna Individual Billing Administration ("Aetna IBA") to administer COBRA coverage, including the collection of monthly premiums for health benefits. (DN 1, ¶ 16). Aetna IBA billed COBRA participants, collected the premiums, and forwarded the funds, after deducting its fee, to the Company via check made payable to "Geopharma, Inc." (DN 1, ¶ 17).

Effective January 1, 2010, Geopharma contracted with Self-Insured Plans, LLC ("SIP") to administer claims for benefits. (DN 1, ¶ 20). SIP terminated its contract with Geopharma effective April 30, 2010, for non-payment of approved claims. (DN 1, ¶ 21). On July 1, 2010, Geopharma entered into a contract with First Benefit Administrators, Inc. to administer claims for benefits effective May 1, 2010. (DN 1, ¶ 22). Geopharma notified Plan participants that medical and prescription drug benefits were canceled effective October 15, 2010. (DN 1, ¶ 23).

Defendant Taneja was the Chief Executive Officer, Secretary, and a Director of Geopharma; Defendant Carol Dore-Falcone was the former Chief Financial Officer, Senior Vice President, and a Director of Geopharma; and Defendant Susan Bongiovanni was the Controller and Director of Human Resources for Geopharma. (DN 1, ¶¶ 7-9). All of these Defendants had signature authority on Geopharma's bank accounts; further, Geopharma required two signatures on checks issued from its accounts. (DN 1, ¶¶ 10-11).

Pursuant to 29 C.F.R. § 2510.3-102, the assets of the Plan included employee premium contributions deducted from payroll as of the earliest date such contributions could reasonably be segregated from Geopharma's general assets. (DN 1, ¶ 24). That regulation also provides that the assets of the Plan included former employees' COBRA premium payments as of the date such premiums were received by Geopharma. (DN 1, ¶ 25). For payroll periods between October 3, 2009 and December 26, 2009, Geopharma withheld employee premium contributions

5

from payroll in the amount of $115,707.19, failed to segregate the contributions from Company assets as soon as it reasonably could do so, and failed to use the funds to pay Aetna premiums. (DN 1, ¶ 26). For payroll periods between January 2, 2010 and October 9, 2010, Geopharma withheld employee premium contributions from payroll in the amount of $101,751.29, failed to segregate the contributions from Company assets as soon as it reasonably could do so, and failed to use the funds to pay claims. (DN 1, ¶ 27). During the period January to October 2010, Geopharma received from Aetna IBA COBRA premium payments totaling $16,507.24, failed to segregate the premiums from Company assets as soon as it reasonably could do so, and failed to use the funds to pay claims. (DN 1, ¶ 28).

During the periods that employees' premium contributions were not remitted to Aetna or used to pay claims as required, Defendants caused or allowed the contributions to be commingled with the general assets of the Company. (DN 1, ¶ 29). During the periods that participants' COBRA premium payments were received from Aetna IBA and not used to pay claims as required, Defendants caused or allowed the contributions to be commingled with the general assets of the Company. (DN 1, ¶ 30). Defendants further caused or allowed the commingled funds to be used for Company purposes and obligations rather than for the exclusive benefit of the Plan and the participants. (DN 1, ¶ 31). Defendants have failed to take action to restore to participants their premium contributions deducted from payroll and COBRA premium payments, plus lost interest that has accrued. (DN 1, ¶ 32). Defendants failed to monitor, control or attempt to rectify the acts of one another with respect to the Plan. (DN 1, ¶ 34).

Based on the facts set forth in the Complaint, the Secretary seeks to hold Defendants liable as fiduciaries for the losses to the Plan in the amount of the outstanding employee contributions and COBRA payments and lost earnings to date. The Secretary also seeks to

permanently enjoin Defendants from again violating ERISA and from serving as a fiduciary, administrator, or trustee, or having control over the assets of any ERISA-covered plan. (DN 1, prayer for relief).

As discussed below, the Secretary's Complaint alleges sufficient facts to establish that Taneja was a "fiduciary" to the Plan as defined in ERISA section 3(21)(A), 29 U.S.C. § 1002(21)(A), which precludes dismissal of the Complaint for failure to state a claim.

## III. Argument

### A. THE SECRETARY'S COMPLAINT COMPLIES WITH THE FED. R. CIV. P.

#### 1. The Requirement for the Secretary's Complaint Under Fed. R. Civ. P. 8(a).

Fed. R. Civ. P. 8(a) requires that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." It is well established that to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1268 (11th Cir. 2009); *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007). A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference" that the defendant is liable for the misconduct alleged. *Iqbal,* 556 U.S. at 677 (citing *Twombly*, 550 U.S. at 570); *see McCreary v. Parker*, 2012 WL 205925, *1 (11th Cir. 2012). "Plausible grounds," however, does not impose a probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the claim. *See Twombly*, 550 U.S. at 556. When ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint. *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (*citing Twombly*, 550 U.S. at 556); *see*

*Waters Edge Living, LLC v. RSUI Indemnity Co.*, 2009 WL 4366031, * 1 (11th Cir. 2009). All reasonable inferences are to be drawn in favor of the non-moving party. *Epps v. Watson*, 492 F.3d 1240, 1242 (11th Cir. 2007). The Secretary's Complaint easily meets these standards.

### 2. The Secretary's Complaint Pled Sufficient Factual Allegations of Taneja's Status as a Fiduciary as Required by Fed. R. Civ. P. Rule 8(a).

#### a. Taneja is a Fiduciary Because He Exercised Authority or Control Over Plan Assets.

In his Complaint, the Secretary alleges that Taneja, along with other individuals, was a "fiduciary" as defined by ERISA section 3(21)(A). "Congress intended ERISA's definition of fiduciary 'to be broadly construed.'" *Lopresti v. Terwilliger*, 2126 F.3d 34, 40 (2d Cir. 1997) (internal citations omitted). ERISA defines "fiduciary" in broad function terms; a person is a fiduciary to a plan to the extent:

> (i) he exercises any discretionary authority or discretionary control respecting the management of such plan **or exercises any authority or control respecting management or disposition of assets…**or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. §1002(21)(A) (emphasis added). Thus, ERISA section 3(21)(A) imposes fiduciary responsibilities both on those who in fact exercise authority and on those who have been empowered to act. It is important to highlight that one does not have to exercise "discretionary" authority or "discretionary" control over plan assets to become a fiduciary. It is sufficient to exercise any authority or control over their management or disposition. *See Chao v. Day*, 436 F.3d 234, 236 (D.C. Cir. 2005) (discretion requirement conspicuously absent from plan asset disposition provision of fiduciary definition); *Lopresti v. Terwilliger*, 2126 F.3d 34, 40 (2d Cir. 1997) (president who determined which bills to pay deemed fiduciary); *Pfahler v. National Latex Prods. Co.*, 517 F.3d 816 (6th Cir. 2007) (denial of summary judgment upheld where there were

genuine issues of material fact as to whether the defendants had sufficient control to be unnamed fiduciaries); *Yeseta v. Baima*, 837 F.2d 380, 384-85 (9th Cir. 1988) (holding officer who exercised control over assets was fiduciary).

The Secretary's claim that Taneja is a fiduciary is plausible. At the pleading stage, the court presumes that general allegations embrace those specific facts that are necessary to support the claim. *National Organization for Women, Inc. v. Scheidler,* 510 U.S. 249, 256 (1994); *Mulhall v. UNITE HERE Local 355*, 618 F.3d 1279, 1286 (11th Cir. 2010). Further, the court must consider the pleadings in its entirety. *Tellabs Inc. v. Makor Issues and Rights, Ltd.* 551 U.S. 308, 323-24 (2007). As a signatory on Geopharma's bank accounts, Taneja had the authority to act. To the extent that Taneja exercised *any* authority or control over the Company's general assets in the bank accounts, he exercised control over Plan assets because employee premiums that were deducted from compensation and COBRA payments Geopharma received from former employees were never remitted to Aetna or used to pay claims. Pursuant to 29 C.F.R. § 2510.3-102, the assets of the Plan included employee premium contributions deducted from payroll as of the earliest date such contributions could reasonably be segregated from the Geopharma's general assets. The COBRA payments became Plan assets the moment they were received by Geopharma. (DN 1, ¶25). The Plan's assets remained in Geopharma's operating account and were used for other purposes, rather than for the exclusive purpose of providing health and welfare benefits to employees. (DN 1, ¶ 31). *See United States v. Grizzle*, 933 F.2d 943, 946-47 (11th Cir. 1991) (plan assets consist of employee contributions even before their delivery to the plan).

As the CEO, Secretary, Director, and signatory on the Geopharma's bank accounts, it is plausible Taneja made decisions regarding how Geopharma's funds were to be spent. It is also

plausible that Taneja knew Aetna cancelled coverage because Geopharma had failed to pay premiums. Further, it is plausible that the officers and/or directors of Geopharma approved and authorized the self-funded arrangement established on January 1, 2010. (DN 1, ¶ 18). It is also plausible that as CEO Taneja knew that SIP, the claims administrator, canceled its contract with Geopharma because Geopharma was failing to pay approved claims and that a new administrator had to be retained. (DN 1, ¶¶ 20-22). In fact, it is implausible that as CEO Taneja did not know why Aetna canceled the insurance, that Geopharma set up a self-funded plan, and that a new claims administrator had to be hired because the previous one refused to continue when Geopharma failed to pay claims.

Geopharma filed for bankruptcy in the Middle District of Florida on March 23, 2011 (Case No. 8:11-bk-05210-CED), so it is plausible that Taneja knew Geopharma was having cash flow issues and was using employee compensation and COBRA payments to fund operations rather than using the funds to pay medical claims, as alleged by the Secretary. (DN 1, ¶¶ 27-31). That knowledge should have triggered an investigation by Geopharma's officers and directors into the status of the funds withheld from employee compensation and COBRA payments received to determine whether Geopharma was administering the Plan in accordance with its terms and ERISA. This inference is reasonable and is the basis for the plausible claim that, as an officer and director and signatory on bank accounts, Taneja had authority and control over the disposition of the Plan's assets. *See Iqbal,* 556 U.S. at 664 ("determining whether a complaint states a plausible claim is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense").

Taneja's reliance on the 11th Circuit's decision in *ITPE Pension Fund v. Hall*, 334 F.3d 1011 (11th Cir. 2003) is misplaced. Instead, that decision squarely supports the

Secretary's contention that Taneja is a fiduciary. In the opening paragraph of the decision, the court states,

> [ERISA] imposes strict fiduciary duties on certain persons with control over assets of covered employee benefit plans. Under these provisions, when unpaid contributions to a plan are identified as immediate assets of a plan, **officers of the nonpaying corporation with control and authority over the unpaid contributions may be held liable for the amount of nonpayment.**

334, F. 3d at 1012 (emphasis supplied). The court pointed out that unpaid employee contributions are assets of the plan. *Id.* at 1014. The defendants, officers of the company, were not held liable for the unpaid contributions because the funds at issue were employer contributions and the court held that the governing documents and agreements of the parties did not clearly establish the funds were assets of the plan – whereas, in the case at hand, the funds at issue were unremitted employee contributions and, therefore, were plan assets.

The Eleventh Circuit's decision in the *Cotton* case is also readily distinguishable. *Cotton v. Mass. Mut. Life Ins. Co.*, 402 F.3d 1267 (11th Cir. 2005). That case was initially filed in state court with plaintiffs alleging state law claims. Defendants removed it to federal court alleging that these claims were pre-empted by ERISA. Upon review, the Eleventh Circuit found, unsurprisingly, that plaintiffs had pled insufficient facts to establish that Mass Mutual was a fiduciary. The court stated, "[c]ases holding that insurers like Mass Mutual are not ERISA fiduciaries are numerous." *Id.* at 1279 (internal citations omitted). Taneja had control over accounts that contain Plan assets; he was not some third party selling a product to an ERISA plan. Thus, the *Cotton* case is not dispositive or even analogous to the facts at issue here.

Taneja's reliance on the decisions in *Lopresti v. Terwilliger; Sullivan v. Marble Unique Corp.*, 2011 WL 5401987 (E.D. N.Y. 2011); *Gross v. Hale-Halsell Co.*, 2006 WL 2666993 (N.D. Okla. 2006); and *Teamsters Health and Welfare Fund of Phildelphia and Vicinity v. World*

*Transp., Inc.*, 241 F.Supp.2d 499 (E.D. Pa. 2003) is premature as those cases were not decided at the pleading stage. *See Woods v. Southern Co.*, 396 F.Supp.2d 1351, 1365 (N.D. Ga. 2005) ("the Court is reluctant to dispose of Plaintiff's ERISA claims based on absence of exacting factual averments respecting the existence of Defendants' fiduciary status"). As Judge Story noted in *Southern*, questions of fiduciary status are not appropriate for decision at the pleading stage. *Id.* at 1365 and cases cited therein*; see also Travelers Cas. and Sur. Co. of America v. Hudec*, 2011 WL 722962, *3 (M.D. Fla. 2011) (denying motion to dismiss for failure to allege sufficient facts showing fiduciary status). The *Finkel v. Romanowicz* case, 577 F.3d 79 (2d Cir. 2009), is instructive for those filing default judgment, but is not binding on this Court when deciding whether the Secretary has sufficiently pled facts alleging that Taneja is a fiduciary in order to survive a motion to dismiss. It held that the Complaint lacked sufficient facts to establish fiduciary status for purposes of default judgment. The court was not reviewing a motion to dismiss, so its decision does not support a finding that the Secretary's Complaint is somehow deficient as to Taneja.

The Secretary's factual assertions, taken as true, state a plausible claim that Taneja was a fiduciary by virtue of his authority and control over the Plan's assets in the Geopharma's bank accounts.

### b. Taneja is a Fiduciary Because He Had a Duty to Monitor Geopharma's Management and Administration of the Plan.

As the Plan Administrator, Geopharma was a fiduciary to the Plan. (DN 1, ¶ 6). Taneja does not dispute this allegation and reinforces it with the introduction of the Plan Document for the self-funded arrangement Geopharma established in 2010. (DN 12-1 and 2). The Secretary alleges that Geopharma failed to monitor the other fiduciaries and failed to rectify their breaches

12

of fiduciary duty with respect to the Plan. (DN 1, ¶¶ 32-33). Geopharma has a duty to monitor the actions of those that administer the Plan on its behalf. In turn, someone must monitor Geopharma to ensure that it is meeting its fiduciary duties. That responsibility falls to its officers and directors, which includes Taneja, who was the Geopharma's CEO, Secretary, and Director at the time of the violations alleged in the Complaint. As a corporation, Geopharma can only act through its officers and directors who must oversee the actions of the people they appoint to act on behalf of the Company with respect to the Plan, or the people they appoint to administer and manage the Plan.

The Secretary alleges that Carol Dore-Falcone, Geopharma's former CFO, Senior Vice President, and Director, and Susan Bongiovanni, the Controller and Director of Human Resources, were also fiduciaries who breached their duties to the Plan. As CFO, Dore-Falcone must answer to the CEO and/or the other directors. To the extent Dore-Falcone and Bongiovanni were appointed to act on behalf of the Plan, then the people who made the appointment, plausibly Geopharma's officers and directors, including Taneja, have a duty to monitor their actions. *See Leigh v. Engle*, 727 F.2d 113, 133 (7th Cir. 1984); *see also* 29 C.F.R. § 2509.75-8, Q&A D-4 (stating that members of the board of directors are fiduciaries to the extent they perform fiduciary functions); and Q&A FR-17 (appointing fiduciary has duty to review performance of appointed fiduciaries to ensure compliance with terms of plan, statutory standards, and needs of plan). Therefore, the Secretary has alleged a plausible claim that Taneja is a fiduciary who had a duty to monitor Geopharma and the other fiduciaries to the Plan.

### 3. Taneja Is Not Entitled To Attorney's Fees Under ERISA Section 502(g).

Taneja's request for attorney's fees under 29 U.S.C. § 1132(g) is without merit. ERISA section 502(g) provides for attorney's fees in appropriate circumstances when an action is

brought by a fiduciary, beneficiary, or participant. The Secretary is none of these. Therefore, Taneja's claim for attorney's fees should be denied.

**IV. <u>Conclusion</u>**

The Secretary's Complaint sets forth sufficient facts to establish a plausible claim that Defendant Mihir K. Taneja is a fiduciary under ERISA. Therefore, the Complaint complies with Fed. R. Civ. P. 8(a) and Taneja's Motion to Dismiss should be denied.

Respectfully submitted this 16th day of May 2014.

| | |
|---|---|
| <u>ADDRESS</u>: | M. PATRICIA SMITH |
| | Solicitor of Labor |
| Office of the Solicitor | |
| U. S. Department of Labor | STANLEY E. KEEN |
| 61 Forsyth Street, S.W. | Regional Solicitor |
| Room 7T10 | |
| Atlanta, GA  30303 | ROBERT M. LEWIS, JR. |
| | Counsel |
| Telephone:  404.302.5435 | |
| Facsimile:  404.302.5438 | *s/Karen E. Mock* |
| | KAREN E. MOCK |
| E-mail:  Atl.fedcourt@dol.gov (Primary) | Senior Trial Attorney |
| Mock.karen@dol.gov | |
| | Attorneys for Plaintiff Thomas E. Perez, Secretary of Labor, United |
| SOL Case No. 13-01172 | States Department of Labor |

## **CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed The Secretary's Memorandum in Opposition to Defendant Mihir K. Taneja's Motion to Dismiss with the Clerk of Court using the CM/ECF system on May 16, 2014, which will send notification of such filing to the following counsel of record in this case:

> Daniel Alter, Esq. – counsel for Mihir K. Taneja
>
> Constantine W. Papas, Esq. – counsel for Carol Dore-Falcone
>
> Michael P. Silver, Esq. – counsel for Geopharma, Inc. Susan Bongiovanni, and the Geopharma, Inc. Group Health Plan

>                                     /s/ Karen E. Mock
>                                     KAREN E. MOCK
>                                     Senior Trial Attorney
>
>                                     Telephone: 404.302.5459
>                                     Facsimile: 404.302.5438
>                                     Mock.karen@dol.gov
>                                     Atl.fedcourt@dol.gov (Primary)

SOL Case No. 13-01172